# United States Court of Appeals for the Fifth Circuit

No. 25-40052
Summary Calendar

_____

United States Court of Appeals
Fifth Circuit

**FILED**
September 22, 2025

Lyle W. Cayce
Clerk

Allan Andres Cevallos Sarzosa,

*Plaintiff—Appellant*,

*versus*

Cryster Dennisse Vergara Enriquez,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 3:24-CV-89

_____

Before Dennis, Haynes, and Ramirez, *Circuit Judges*.

Per Curiam:[*]

The parties—Allan Sarzosa (father) and Cryster Vergara (mother)—share a minor child (KACV). Sarzosa filed a petition seeking the child's return to another country under the Hague Convention. *See* 22 U.S.C. § 9001. To prevail, Sarzosa bore the burden of showing the child's habitual residence was in that country at the time of removal. The district court held

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 25-40052

a lengthy hearing and issued a detailed opinion explaining why Sarzosa did not meet that burden. For the reasons that follow, we AFFIRM.

I

Vergara, an Ecuadorian citizen, moved to the United States in early 2022 after obtaining a green card and closing her business in Ecuador. She settled in New Jersey in preparation for the birth of her child, KACV. She established a home, secured healthcare, and was supported by her family in the United States. KACV was born in May 2022, and Vergara and the child lived together in New Jersey for the first two months of KACV's life.

In July 2022, Vergara and KACV traveled to Ecuador for what she initially intended to be a short visit. While there, they stayed in temporary housing and then a year-long lease, and KACV regularly visited Cevallos and her maternal grandmother. Vergara later decided to remain in Ecuador until the end of the year. Vergara, Cevallos, and KACV traveled to the United States in December 2022. Unbeknownst to Vergara, Cevallos obtained an apostille on KACV's birth certificate. The three returned to Ecuador for Christmas.

In January 2023, Cevallos registered KACV as an Ecuadorian citizen and took possession of key travel documents without Vergara's knowledge. Under Ecuadorian law, once KACV was registered as a citizen, Vergara could not leave the country with the child without Cevallos's consent. ECUADORIAN CODE OF CHILDHOOD & ADOLESCENCE art. 109. Despite Vergara's efforts—including going to Cevallos' office building to retrieve the documents and being chased by security guards—she could not leave Ecuador without Cevallos' consent, and she and KACV remained there for several months.

In mid-2023, Cevallos, Vergara, and KACV flew to Florida. The three had return tickets to Ecuador, but on the date of their scheduled

departure, Vergara informed Cevallos that she and KACV would not be leaving the United States. Cevallos returned to Ecuador as planned, and Vergara and KACV flew to Texas, where they both settled indefinitely. Cevallos then filed a petition under the Hague Convention seeking KACV's return to Ecuador. After a hearing with extensive testimony and exhibits, the district court denied the petition, concluding that Cevallos had not shown Ecuador was KACV's habitual residence prior to removal.

## II

The Hague Convention's purpose is to secure the "prompt return of a child wrongfully removed or retained away from the country in which she habitually resides." *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020). A petitioner must prove by a preponderance of the evidence that the child's habitual residence was the country to which return is sought. Habitual residence means "the place where a child is at home," and the determination is highly fact specific. *Id.* at 77. To assess habitual residence, a court may consider the child's physical location, the passage of time, the child or parent's immigration status, family ties, and the location of personal belongings, among other factors. *Id.* at 78 n.3. For young children, "a caregiving parent's ties to the country at issue [are] highly relevant." *Id.* at 80 n.4. "[C]ourts must [remain] sensitive to the unique circumstances of the case and informed by common sense," and in doing so, recognize situations where "an infant lived in a country only because a caregiving parent had been coerced into remaining there." *Id.* at 78. On appeal, factual determinations are reviewed for clear error, and credibility assessments are entitled to particular deference. *Cartes v. Philips*, 865 F.3d 277, 283 (5th Cir. 2017).

The district court concluded that Ecuador was not KACV's habitual residence based on three principal findings: (1) KACV's habitual residence was the United States during her first two months of life; (2) Cevallos

coerced Vergara and KACV to remain in Ecuador from January to June 2023; and (3) the evidence from July to December 2022 was insufficient to show a change in habitual residence. We address each seriatim.

*First*, the record supports the district court's finding that KACV's habitual residence was the United States at birth. Vergara had relocated her life to New Jersey—closing her business in Ecuador, selling her belongings, and establishing residence in the United States. KACV lived with Vergara in a leased apartment, attended regular pediatric appointments, and had lawful residency status. Cevallos offered no evidence beyond his own testimony that this arrangement was temporary. We see no clear error.

*Second*, the district court did not clearly err in finding that Cevallos coerced Vergara. Coercion can include both legal and illegal acts that collectively demonstrate control. *Maxwell v. Maxwell*, 588 F.3d 245, 248, 253 (4th Cir. 2009). Here, Cevallos' actions—registering KACV as an Ecuadorian citizen, confiscating travel documents, and secretly obtaining an apostille—effectively prevented Vergara from leaving Ecuador. The court credited Vergara's testimony and reasonably concluded she was coerced into remaining there.

*Finally*, the district court did not clearly err in finding that KACV's residence in Ecuador between July and December 2022 did not change her habitual residence. The evidence was mixed: while Vergara leased a home in Ecuador and sold her U.S. car, she retained other belongings in the United States, maintained close family ties, and had not formally severed her U.S. residency.

On this record, we discern no clear error in the district court's ruling that Ecuador had not supplanted the United States as KACV's habitual residence.

AFFIRMED.